Laura Stevens, Esq. (SBN 64643)
Attorney at Law
2831 Telegraph Ave.
Oakland, CA 94609
Telephone:  (510) 849-0381
Facsimile:   (510) 849-0382

Attorney for Defendant
THE HIGHER GEAR GROUP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL GRUMLEY,<br><br>        Plaintiff,<br> vs.<br><br>THE HIGHER GEAR GROUP, INC.<br><br>       Defendant. | Case No. C07-02849 JL<br><br>DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS FOR:<br><br>1. Breach of Contract<br>2. Breach of the Duty of Loyalty<br>3. Breach of the Duty of Competence and Diligence<br>4. Trespass to Chattels<br>5. Intentional Interference with Contractual Relations<br>6. Breach of Contract<br><br>DEMAND FOR JURY TRIAL |

Defendant THE HIGHER GEAR GROUP, INC. ("Defendant" or "THGG") hereby answers the Complaint filed by Plaintiff DANIEL GRUMLEY ("Plaintiff" or "Grumley") as follows:

 1. In responding to the allegations contained in paragraph 1 of the Complaint, Defendant admits that it terminated the employment of Plaintiff, denies that said termination was in violation of Plaintiff's employment contract, and denies that Defendant failed to pay Plaintiff

1

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

1    vested wages.  Insofar as and/or to the extent Plaintiff's allegations state

2    legal conclusions, no response is required.

3    2.    In responding to the allegations contained in paragraph 2 of the

4          Complaint, Defendant lacks sufficient knowledge or information to form a

5          belief as to the truth of the allegations contained in said paragraph, and

6          on that basis denies all allegations contained therein.

7    3.    In responding to the allegations contained in paragraph 3 of the

8          Complaint, Defendant denies that Plaintiff entered into his employment

9          contracts with Defendant in the Northern District of California; but admits

10         that Plaintiff worked for Defendant both within and without of this District;

11         admits that Defendant paid Plaintiff employment wages in this District;

12         and admits that Plaintiff's termination of employment occurred in this

13         District.  As to all other allegations in paragraph 3 of the Complaint,

14         Defendant lacks sufficient information or knowledge to form a belief as to

15         the truth of the other allegations contained in said paragraph, and on that

16         basis denies all allegations contained therein.

17   4.    In responding to the allegation contained in paragraph 4 of the Complaint,

18         Defendant lacks sufficient information or knowledge to form a belief as to

19         the truth of this allegation, and on that basis denies said allegation.

20   5.    In responding to the allegations contained in paragraph 5 of the

21         Complaint, Defendant admits it is a corporation doing business in

22         California, that it is a corporation formed under the laws of the State of

23         Illinois, with its principal place of business in Illinois.  Further Defendant

24         admits it is, *inter alia*, in the business of selling customer relationship

25

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

1    management software to car dealerships as a tool to manage their sales,

2    as well as sales prospects, leads and follow-ups.

3    6.    In responding to the allegations contained in paragraph 6 of the

4    Complaint, Defendant admits that this court has personal jurisdiction over

5    Defendant by virtue of Defendant's contacts within this District.   Insofar

6    as and/or to the extent Plaintiff's allegations state legal conclusions, no

7    response is required.  Defendant denies that any breach of Plaintiff's

8    employment contract occurred, except as alleged in Defendant's

9    Counterclaims stated below.

10   7.    In responding to the allegations contained in paragraph 7 of the

11   Complaint, Defendant admits that Defendant entered into a written

12   agreement with Plaintiff dated April 30, 2004.   A copy of that agreement

13   is attached hereto as Exhibit A and the terms thereof are incorporated by

14   this reference.  To the extent Plaintiff's allegations misstate the terms of

15   that agreement, Defendant denies said allegations. Insofar as and/or to

16   the extent Plaintiff's allegations state legal conclusions, no response is

17   required.  Further, Defendant denies the relevance of the contract of April

18   30, 2004, due to the parties agreement of Dec. 26, 2006, Exhibit B

19   hereto, which supersedes all prior agreements.  As such, Plaintiff's

20   allegations regarding all prior agreements is surplusage, and no response

21   is required.

22   8.    In responding to the allegations of paragraph 8 of the Complaint,

23   Defendant denies Plaintiff's allegations characterizing Exhibit A as

24   providing a 4% sales commission on all sales made within Plaintiff's

25   assigned geographic territory.  Further, Defendant denies that the

3

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

employment agreements of 2005 and 2006 were modifications of the
employment agreement of 2004.  The employment agreement of 2006,
attached hereto as Exhibit B and incorporated herein by this reference,
states in pertinent part "This employment offer letter voids any previous
employment offers both written and verbalized.  This will be in effect
December 11, 2006 through January 1, 2008.  This letter supersedes any
written or verbal arrangements before this date."  Plaintiff signed this
agreement on December 28, 2006.  Defendant denies that any terms of
any other agreement continued to exist between the parties.

9.    In responding to the allegations of paragraph 9 of the Complaint,
Defendant denies every allegation of this paragraph except to admit that
Plaintiff continued his employment with Defendant throughout 2005.

10.    In responding to the allegations of paragraph 10 of the Complaint,
Defendant denies that the contract of 2005 was a modification of the 2004
employment agreement and further, Defendant denies the relevance of
any terms of any agreements other than the Dec. 26, 2006 agreement,
Exhbit B hereto.  As such, Plaintiff's allegations in paragraph 10 are
surplusage and no response is required.  Further, Defendant denies that
Plaintiff had any guarantees of employment as alleged in this paragraph
at the time Plaintiff was terminated.

11.    In responding to the allegations of paragraph 11 of the Complaint,
Defendant denies that Plaintiff had any guarantees as alleged in this
paragraph at the time of his termination, the agreement of 2005 having
been voided and superseded by Exhibit B hereto.  Insofar as and/or to the

4

1    extent Plaintiff's allegations state legal conclusions, no response is

2    required.

3    12.    In responding to the allegations of paragraph 12 of the Complaint,

4    Defendant denies that Plaintiff had any terms of employment as alleged in

5    this paragraph at the time of his termination, the agreement of 2005

6    having been voided and superseded by Exhibit B hereto.  Insofar as

7    and/or to the extent Plaintiff's allegations state legal conclusions, no

8    response is required.  Defendant lacks sufficient information or

9    knowledge to form a belief as to the truth of the other allegations

10   contained in said paragraph, and on that basis denies all allegations

11   contained therein.

12   13.    In responding to the allegations of paragraph 13 of the Complaint,

13   Defendant denies that it underwent "further internal reorganizations" in or

14   around June 2005. Defendant admits that Jim Knight was appointed

15   Executive Vice President and was Plaintiff's direct superior.

16   14.    In responding to paragraph 14 of the Complaint, Defendant denies that

17   Plaintiff was not paid his contractual commissions at any time and denies

18   that he made complaints as alleged.  Defendant further denies that

19   Plaintiff was wrongfully denied access to sales information at any time,

20   but rather that Defendant's access policy changed during Plaintiff's

21   employment and the scope of information available to all managers at

22   Plaintiff's level was changed.  Defendant lacks sufficient information or

23   knowledge to form a belief as to the truth of the other allegations

24   contained in said paragraph, and on that basis denies all allegations

25   contained therein.

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

15. In responding to the allegations of paragraph 15 of the Complaint, Defendant denies that Plaintiff was "required" to sign the 12-26-06 agreement, but rather was a new agreement requested by Plaintiff and further denies that said agreement is a modification of any prior agreement, but rather is a new, superseding agreement, governing the employment relationship between the parties. The terms of this agreement, Exhibit B hereto, speak for themselves.

16. Defendant admits it terminated Plaintiff's employment on May 2, 2007.

17. In responding to the allegations of paragraph 17 of the Complaint, Defendant denies that Plaintiff met the terms and conditions of the 12-26-06 agreement. Plaintiff's allegations regarding all prior agreements is surplusage, and no response is required. Defendant denies that Plaintiff posted over $8 million in sales revenue for the Company and that Plaintiff was Defendant's top seller in the four months prior to termination and that Plaintiff earned the commissions alleged. Defendant denies that Plaintiff was lauded by management as alleged. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the other allegations contained in said paragraph, and on that basis denies all allegations contained therein.

18. In responding to the allegations of paragraph 18 of the Complaint, Defendant admits that Plaintiff was terminated on May 2, 2007, effective immediately, through notification by Knight. Defendant denies each and every other allegation in this paragraph.

19. In responding to the allegations of paragraph 19 of the Complaint, Defendant denies each and every allegation in this paragraph.

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

20.    In responding to the allegations of paragraph 20 of the Complaint, Defendant denies that it failed to pay Plaintiff any wages or commissions earned in any amount at any time, including vacation wages.  Insofar as and/or to the extent Plaintiff's allegations state legal conclusions, no response is required.

21.    In responding to the allegations of paragraph 21 of the Complaint, Defendant incorporates by this reference its responses to paragraph 1 through 20 above.

22.    Insofar as and/or to the extent Plaintiff's allegations state legal conclusions, no response is required.

23.    In responding to the allegations of paragraph 23 of the Complaint, Defendant denies that it has violated any of Plaintiff's rights.  Insofar as and/or to the extent Plaintiff's allegations state legal conclusions, no response is required.

24.    Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint, and on that basis denies all allegations contained therein. Insofar as and/or to the extent Plaintiff's allegations state legal conclusions, no response is required.

25.    Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint, and on that basis denies all allegations contained therein. Insofar as and/or to the extent Plaintiff's allegations state legal conclusions, no response is required.

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

26.    Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 26 of the Complaint, and on that basis denies all allegations contained therein. Insofar as and/or to the extent Plaintiff's allegations state legal conclusions, no response is required.

27.    In responding to the allegations of paragraph 21 of the Complaint, Defendant incorporates by this reference its responses to paragraph 1 through 26 above.

28.    In responding to paragraph 28 of the Complaint, Defendant denies that Plaintiff performed the conditions, covenants and promises required of him to be performed in accordance with his employment agreement with Defendant and further denies that Plaintiff fulfilled his duties as an employee.

29.    In responding to the allegations of paragraph 29 of the Complaint, Defendant denies that it breached any terms of its agreement with Plaintiff and specifically denies that its termination of Plaintiff was in violation of his employment contract.

30.    In responding to the allegations of paragraph 30 of the Complaint, Defendant denies that its termination of Plaintiff was in violation of his employment contract and further, Plaintiff's allegations regarding all agreements other than Exhibit B is surplusage, and no response is required.

31.    In responding to the allegations of paragraph 31 of the Complaint, Defendant admits that it paid Plaintiff $38,538 in commissions at the time of his termination.  Defendant denies all other allegations of this

8

paragraph. Insofar as and/or to the extent Plaintiff's allegations state legal conclusions, no response is required.

32.    In responding to the allegations of paragraph 32 of the Complaint, Defendant denies that Plaintiff has been damaged in any amount and that Defendant owes any amounts to Plaintiff and that Plaintiff earned the amounts alleged.

33.    In responding to paragraph 33 of the Complaint, Defendant denies Plaintiff has suffered any losses for which Defendant is liable including losses associated with attorney's fees and litigation costs.  Insofar as and/or to the extent Plaintiff's allegations state legal conclusions, no response is required.

34.    In responding to paragraph 34 of the Complaint, Defendant denies Plaintiff has suffered any losses for which Defendant is liable including losses associated with attorney's fees and litigation costs and/or any penalties.  Insofar as and/or to the extent Plaintiff's allegations state legal conclusions, no response is required.

35.    In responding to the allegations of paragraph 21 of the Complaint, Defendant incorporates by this reference its responses to paragraph 1 through 34 above.

36.    Insofar as and/or to the extent Plaintiff's allegations in paragraph 36 state legal conclusions, no response is required.  Defendant admits it refused to employ and pay Plaintiff after his termination on May 2, 2007.

37.    Insofar as and/or to the extent Plaintiff's allegations state legal conclusions, no response is required to the allegations of paragraph 37.

9

38.    Insofar as and/or to the extent Plaintiff's allegations state legal conclusions, no response is required to the allegations of paragraph 38.

39.    In responding to paragraph 39 of the Complaint, Defendant denies Plaintiff has suffered any losses for which Defendant is liable including losses associated with attorney's fees and litigation costs and/or any penalties. Insofar as and/or to the extent Plaintiff's allegations state legal conclusions, no response is required.

40.    In responding to paragraph 40 of the Complaint, Defendant denies Plaintiff has suffered any losses for which Defendant is liable including losses associated with attorney's fees and litigation costs and/or penalties. Insofar as and/or to the extent Plaintiff's allegations state legal conclusions, no response is required.

41.    In responding to the allegations of paragraph 41 of the Complaint, Defendant incorporates by this reference its responses to paragraph 1 through 40 above.

42.    In responding to the allegations of paragraph 42 of the Complaint, Defendant incorporates by this reference its responses to paragraph 1 through 40 above. Further, insofar as and/or to the extent Plaintiff's allegations state legal conclusions, no response is required.

43.    Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 43, and on that basis denies all allegations contained therein.

44.    In responding to the allegations of paragraph 44 of the Complaint, Defendant incorporates by this reference its responses to paragraph 1

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

through 40 above.  Further, insofar as and/or to the extent Plaintiff's

allegations state legal conclusions, no response is required.

45.    In responding to the allegations of paragraph 45 of the Complaint,

Defendant incorporates by this reference its responses to paragraph 1

through 44 above.

46.    In responding to the allegations of paragraph 46 of the Complaint,

Defendant incorporates by this reference its responses to paragraph 1

through 40 above.  Further, insofar as and/or to the extent Plaintiff's

allegations state legal conclusions, no response is required.

47.    In responding to the allegations of paragraph 47 of the Complaint,

Defendant incorporates by this reference its responses to paragraph 1

through 20 above.  Further, insofar as and/or to the extent Plaintiff's

allegations state legal conclusions, no response is required.

48.    In responding to the allegations of paragraph 48 of the Complaint,

Defendant incorporates by this reference its responses to paragraph 1

through 40 above.  Further, insofar as and/or to the extent Plaintiff's

allegations state legal conclusions, no response is required.

49.    In responding to the allegations of paragraph 49 of the Complaint,

Defendant denies that Plaintiff performed all terms and conditions of his

employment agreement with Defendant and denies that any money is

owed to Plaintiff or that any accounting is due Plaintiff. Insofar as and/or

to the extent Plaintiff's allegations state legal conclusions, no response is

required.

50.    In responding to the allegations of paragraph 50 of the Complaint,

Defendant incorporates by this reference its responses to paragraph 1

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

through 49 above.  Further, insofar as and/or to the extent Plaintiff's

allegations state legal conclusions, no response is required.

51.    In responding to the allegations of paragraph 51 of the Complaint,

Defendant incorporates by this reference its responses to paragraph 1

through 50 above.

52.    In responding to the allegations of paragraph 52 of the Complaint,

Defendant denies that Plaintiff performed all the material requirements of

his position.

53.    In responding to the allegations of paragraph 53 of the Complaint,

Defendant incorporates by this reference its responses to paragraph 1

through 52 above.  Defendant denies that Plaintiff's termination was in

retaliation for any alleged complaints regarding payment of wages and/or

that Defendant was trying to avoid paying wages due.  Further, insofar as

and/or to the extent Plaintiff's allegations state legal conclusions, no

response is required.

54.    Insofar as and/or to the extent Plaintiff's allegations in paragraph 54 of the

Complaint state legal conclusions, no response is required.  Defendant

denies Plaintiff complained to management.

55.    In responding to paragraph 55 of the Complaint, Defendant denies

Plaintiff has suffered any losses for which Defendant is liable including

losses associated with attorney's fees and litigation costs, and/or

penalties, and/or emotional distress, pain and suffering, etc.  Insofar as

and/or to the extent Plaintiff's allegations state legal conclusions, no

response is required.

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

56.     In responding to paragraph 56 of the Complaint, Defendant denies

Plaintiff has suffered any losses for which Defendant is liable including

losses associated with attorney's fees and litigation costs and/or

penalties, and/or emotional or physical distress and/or exemplary and/or

punitive damages.  Further Defendant denies it has acted willfully,

wantonly, maliciously and/or oppressively.  Insofar as and/or to the extent

Plaintiff's allegations state legal conclusions, no response is required.

## DEFENDANT'S AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff's Complaint, and each cause of action therein, fails to state facts

sufficient to constitute a cause of action against Defendant.

### SECOND DEFENSE

Plaintiff's Complaint, and each cause of action therein, is barred, in whole or

in part, by the applicable statute(s) of limitations.

### THIRD DEFENSE

Plaintiff's Complaint, and each cause of action therein, is barred, in whole or

in part, in that Plaintiff did not suffer damages attributable to the action or inaction of

Defendant as alleged in his Complaint.

### FOURTH DEFENSE

Plaintiff's Complaint, and each cause of action therein, is barred by the

defense of unclean hands.

### FIFTH DEFENSE

Plaintiff's Complaint, and each cause of action therein, is barred by the

doctrines of estoppel, waiver and/or release.

### SIXTH DEFENSE

Plaintiff's Complaint, and each cause of action therein, is barred by Plaintiff's

13

willful misconduct and breach of the December 26, 2006 employment agreement.

SEVENTH DEFENSE

The damages allegedly sustained by Plaintiff, if any, were proximately caused by or contributed to, in whole or in part, by Plaintiff's own negligence and Plaintiff's recovery, if any, should be reduced by the proportionate amount that Plaintiff's acts or omissions contributed to his alleged damages.

EIGHTH DEFENSE

Plaintiff's Complaint, and each cause of action therein, is barred, in whole or in part, because all acts of Defendant affecting the terms and/or conditions of Plaintiff's employment were privileged and done with good cause.

NINTH DEFENSE

Plaintiff's Complaint, and each cause of action therein, is barred, in whole or in part, by Plaintiff's failure to exercise reasonable care and diligence to mitigate his alleged damages, if any.

TENTH DEFENSE

Plaintiff's Complaint, and each cause of action therein, is barred, in whole or in part, by the equitable doctrine of laches.

ELEVENTH DEFENSE

Plaintiff's Complaint, and each cause of action therein, is barred, in whole or in part, by the doctrine of after-acquired evidence.

TWELFTH DEFENSE

Plaintiff's Complaint, and each cause of action therein, is barred, in whole or in part, by Plaintiff's own breach of the duty of competence and diligence as set forth in, *inter alia*, Labor Code §§ 2854, 2857, 2858, 2859 and 2865.

THIRTEENTH DEFENSE

14

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

1    Plaintiff's Complaint, and each cause of action therein, is barred, in whole or

2    in part, by Plaintiff's own breach of the duty of loyalty as set forth in, *inter alia*, Labor

3    Code §§ 2853, 2856, 2860 and 2863.

4                               FOURTEENTH DEFENSE

5    Plaintiff was paid all amounts due as wages and/or commissions under the

6    contract.

7                               FIFTEENTH DEFENSE

8    Plaintiff's prayer for punitive or exemplary damages is barred in that Plaintiff

9    has failed to allege sufficient facts of malice, oppression or fraud and such damages

10   are barred by California Civil Code §3294.

11                              SIXTEENTH DEFENSE

12   Plaintiff's prayer for punitive or exemplary damages would violate the due

13   process and excessive fine clauses of the Fifth, Eighth and Fourteenth

14   Amendments of the United States Constitution as well as the Constitution of the

15   State of California.

16                              SEVENTEENTH DEFENSE

17   To the extent Plaintiff's complaint, or any purported cause of action therein,

18   alleges negligently caused emotional or physical injury, this court lacks jurisdiction

19   and any recovery is barred by the exclusivity of remedy under the California

20   Worker's Compensation Act (Labor Code § 3200 et seq.)

21                              EIGHTEENTH DEFENSE

22   Venue is improper in this court.

23                              NINTEENTH DEFENSE

24   This answering Defendant presently has insufficient knowledge or

25   information on which to form a belief as to additional, unstated affirmative defenses.

                                              15

Defendant reserves the right to file an amended and/or supplemental Answer with the Court when such knowledge or information becomes available.

WHEREFORE, Defendant prays as follows:

1.  That the Complaint, and each purported cause of action therein, be dismissed with prejudice, and that Plaintiff take nothing by reason of his Complaint;

2.  That Defendant be awarded its costs of suit incurred in defense of this action; and

3.  For such other relief as the Court deems just and proper.

## DEFENDANT'S COUNTERCLAIMS

As and for its counterclaims against Plaintiff, Defendant alleges as follows:

### JURISDICTIONAL ALLEGATION

1.  These counterclaims are compulsory because they arise from the same transaction or occurrence as the claims set forth in the Complaint.  This Court has jurisdiction over the subject matter of these counterclaims based on 28 U.S.C. § 1367.

### FACTUAL ALLEGATIONS

2.  Beginning no later than December, 2006, Grumley began working on a business of his own, Event by Wire, to which, unbeknownst to THGG, Grumley devoted virtually all his time and efforts.  Grumley revealed to THGG the he had an interest in this business but falsely asserted that he spent no time on it, rather claiming that his brother actively ran Event by Wire without his participation.

3.  Beginning no later than December, 2006, Grumley used THGG computers, telephones, internet, products and other resources to conduct the business of Event by Wire.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4.    Beginning no later than December, 2006, Grumley failed to devote his time, effort, skills and/or abilities to his duties as an employee of THGG, but rather devoted his efforts for his personal benefit.

5.    Beginning no later than December, 2006, unbeknownst to THGG, Grumley began soliciting co-employees of THGG to work for Grumley and for Event by Wire, urging those co-employees to do what he was doing, which was devoting his time to Event by Wire, and concealing that fact from THGG management.  On more than one occasion Grumley used THGG telephones, computers and other resources to solicit co-employees as described herein.

6.    At the beginning of his employment with THGG, Grumley signed a CONFIDENTIALITY, NON-COMPETITION AND NON-SOLICITATION AGREEMENT, dated 18 May 2004, Exhibit C hereto.  That Agreement provides, *inter alia*, that Grumley will not solicit any employee of THGG to leave the employ of THGG.

7.    Beginning no later than December, 2006 Grumley misrepresented to customers of THGG the terms and conditions for sales of products of THGG.  Grumley offered THGG products only for prices higher than required and on payment terms more demanding than required by THGG. These misrepresentations to customers were in violation of policies and practices of THGG, and were for the purpose of benefiting Grumley personally under the compensation provisions of his employment with THGG.

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

8.    Beginning no later than December, 2006 Grumley intentionally engaged
in rude, unprofessional, unreliable and/or other damaging behavior with
both customers and co-workers of THGG.

9.    As a proximate result of Grumley's actions as stated above, THGG is
informed and believes and on that basis alleges that sales were lost
which otherwise would have been made, sales were not achieved which
otherwise would have been achieved, and other losses were incurred.

FIRST CAUSE OF ACTION

(Breach of Contract)

10.    Counter-Plaintiff THGG realleges and incorporates paragraphs 1 through
9 of this Counterclaim as if set forth in full herein.

11.    Grumley breached the terms of his employment agreement by, *inter alia*,
refusing to employ agreed upon tactics, procedures and efforts to pursue
sales of THGG's products and services; failing to meet specified minimum
sales criteria, including making the required number of contacts and
presentations as set forth in the December 26, 2006 agreement, attached
hereto as Exhibit B; failing to devote his time, effort, skills and/or abilities
to his duties as an employee of THGG, but rather devoted his efforts for
his personal benefit; misrepresenting the hours worked for THGG and
accepting payment from THGG in excess of the hours actually worked;
converting THGG resources for his own use and personal benefit;
misrepresenting the terms and conditions for sales of products of THGG
to potential customers for his own benefit, resulting in lost sales; and
otherwise breaching the duty of loyalty, good faith and diligence expressly
and impliedly imposed upon Grumley by contract.

12.     THGG has been damaged in an amount to be proven at trial, but includes the value of services Grumley was paid in excess of the work performed and damages to THGG's business and sales caused by Grumleys actions and omissions.

SECOND CAUSE OF ACTION

(Breach of the Duty of Loyalty)

13.     Counter-Plaintiff realleges and incorporates paragraphs 1 through 12 of this Counterclaim as if set forth in full herein.

14.     At all times pertinent to this Complaint and Counterclaim, Grumley owed a duty of undivided loyalty to THGG, as imposed by common law and by statute as set forth in, *inter alia*, Labor Code §§ 2853, 2856, 2860 and 2863.

15.     Grumley breached this duty of loyalty by the actions and omissions set forth herein.

16.     THGG has thereby been damaged in an amount to be proven at trial.

THIRD CAUSE OF ACTION

(Breach of the Duty of Competence and Diligence)

17.     Counter-Plaintiff realleges and incorporates paragraphs 1 through 16 of this Counterclaim as if set forth in full herein.

18.     At all times pertinent to this Complaint and Counterclaim, Grumley was owed a duty of competence and diligence to THGG, as imposed by common law and by statute as set forth in, *inter alia*, Labor Code §§ 2854, 2857, 2858, 2859 and 2865.

19.     Grumley breached this duty of competence and diligence by the actions and omissions set forth herein.

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

20.    THGG has thereby been damaged in an amount to be proven at trial. Pursuant to the provisions of Labor Code § 2865, Grumley is liable to Counter-Plaintiff for the injuries and damages sustained.

FOURTH CAUSE OF ACTION

(Trespass to Chattels)

21.    Counter-Plaintiff realleges and incorporates paragraphs 1 through 20 of this Counterclaim as if set forth in full herein.

22.    Beginning no later than December, 2006, Grumley used THGG computers, telephones, internet, products and other resources to conduct the business of Event by Wire.

23.    At all times pertinent to this Complaint and Counterclaim, Counter-Plaintiff had an exclusive ownership interest in these resources and Grumley was authorized to use these resources only for the benefit of Counter-Plaintiff.

24.    Grumley wrongly and intentionally interfered with Counter-Plaintiff's rights to this property by using it for his own purposes, thereby impeding Counter-Plaintiff's use and enjoyment of its property and resulting in trespass.

25.    THGG has thereby been damaged by reason of this impairment of property and/or the loss of its use in an amount to be proven at trial.

FIFTH CAUSE OF ACTION

(Intentional Interference with Contractual Relations)

26.    Counter-Plaintiff realleges and incorporates paragraphs 1 through 25 of this Counterclaim as if set forth in full herein.

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

27.    Grumley was aware of Counter-Plaintiff's existing contracts and business relationships with various customers with whom he came in contact in the course of his employment with Counter-Plaintiff.

28.    Despite knowing of these contracts and existing business relationships, Grumley intentionally interfered with these contracts and existing business relationships by, *inter alia*, failing to service existing customers as he was required and instead working on his own business, misrepresenting to customers of THGG the terms and conditions for sales of products of THGG and offering such customers THGG products only for prices higher than required and on payment terms more demanding than required by THGG, and intentionally alienating THGG customers by rude and insulting conduct.

29.    As a direct result of Grumley's actions and omissions, Counter-Plaintiff was damaged in an amount according to proof due to the loss of sales and customers and harm to its reputation and good will in the industry.

30.    Grumley's actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of Counter-Plaintiff, and therefore Counter-Plaintiff is entitled to an award of exemplary and punitive damages in an amount according to proof.

SIXTH CAUSE OF ACTION

(Breach of Contract)

31.    Counter-Plaintiff realleges and incorporates paragraphs 1 through 30 of this Counterclaim as if set forth in full herein.

32.    At all times pertinent to this Complaint and Counterclaim, Grumley owed a duty of non-solicitation of employees of THGG expressly and impliedly

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

1    imposed upon Grumley by contract, which duty Grumley breached as

2    alleged above.

3    33.    THGG has been damaged in an amount to be proven at trial, but includes

4    the value of services Grumley was paid in excess of the work performed

5    and damages to THGG's business and sales caused by Grumleys actions

6    and omissions, and attorneys' fees and expenses.

7    WHEREFORE, Counter-Plaintiff prays as follows:

8    1.    That judgment be entered in Counter-Plaintiff's favor, by way of its

9    counterclaims in an amount to be proven at trial;

10   2.    That the court disgorge any profits made by Grumley in breach of his

11   duty of loyalty;

12   3.    That Counter-Plaintiff be awarded its attorney's fees, expenses and

13   costs of suit incurred in defense of this action;

14   4.    That the court enjoin Grumley from further actions in breach of his

15   duties; and

16   5.    For such other relief as the Court deems just and proper.

17   Dated:  July 9, 2007    _____

18                          Laura Stevens
                            Attorney for Defendant/Counter-Plaintiff
19                          THE HIGHER GEAR GROUP, INC.

20   **<u>DEMAND FOR JURY TRIAL</u>**

21   Defendant, The Higher Gear Group, Inc., hereby requests a trial by jury in all

22   matters triable by jury.

23   Dated:  July 9, 2007    _____

24                          Laura Stevens
                            Attorney for Defendant/Counter-Plaintiff
25                          THE HIGHER GEAR GROUP, INC.

22

**ANSWER AND COUNTERCLAIM**
Grumley vs. THGG Case C07-02849 JL

04/30/04 12:03P P.001

Exhibit A

April 30, 2004

Dan Grumley

Dear Dan,

The Higher Gear Group, Inc. is pleased to offer you the position of Western Regional VP of Sales. You are responsible for building a sales team to cultivate, present, represent, and sell the software to dealerships west of the Mississippi. An example of the sales commission plan is shown below, but may change from time to time.

| Monthly | Term | Fin. Fee | Contract | Fin. Dollars | Servers | Install | Training | Net | One Time | Comm. Amount | Comm. % | Comm Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $2,498 | 39 | 15% | $97,422 | (14,613) | (9,000) | (4,500) | (3,500) | $65,808.70 | $10,000 | $75,809 | 5% | $3,790 |

Your pay structure will be set up so that you will receive a fixed compensation of $200,000/year. This compensation includes all home office expenses and local vehicle usage (car allowance). Additional benefits that will be supplied to you are as follows:

1. You and your family will be enrolled with our medical plan. Specifics of the plan will follow
2. Laptop and Projector will be supplied
3. You will be provided with a Nextel phone with UNLIMITED calls.
4. All travel expenses are paid by THGG and reservations are done through the office with prior approval.
5. An additional $30 per Diem for 8 hr away from home base days with overnight stays.
6. 401K is offered after 90 days of employment with no company participation.
7. Vacation comes one (1) week after the first year, and two (2) weeks after the second year and two (2) weeks each year thereafter.

The Commission Plan as discussed may also change from time to time. As the Western Regional VP of Sales you will receive a 4% commission for deals closed and funded in your territory. The cost of salaries for salespeople in the Western Region will be deducted against revenues before commissions. Additional expenses accrued and other agreed to obligations may be done in the same fashion. The only exclusions from your commission may be dealers already contracted with THGG that may add locations. This will be formally documented on a case-by-case basis.

You will be responsible for managing the sales force reporting weekly to me on the progress of deals. After a 90-day ramp period for each salesperson, you are to see that the salespeople you hire close a minimum of three (3) deals on average per month. You will be using our current price matrix in conjunction with our CFO to do quotas.

Future Sales People must report and do:

TEN (10) in-store approaches per week in addition to the "inside referrals" generated from the company.
FIVE (5) in-store presentations per week in addition to the "inside referrals" generated from the company.
THREE (3) in-store proposals per week

You must maintain these numbers as a minimum standard to move The Higher Gear Group, Inc. sales further.

This offer is contingent upon THGG receiving the original signed Non-Compete Agreement as well as a fully executed copy of this letter. An agreed start date would be May 17th.

We look forward to having you join our team and wish you great success in your career with us.

Sincerely,

Robert C. Green
Chief Executive Officer

Please acknowledge your acceptance of this offer by signing where indicated.
Agreed to this _____ day of _____, 2004

Dan Grumley

The Higher Gear Group, Inc. 2155 Stonington Ave #206, Hoffman Estates, IL 60195 Ph 847.843.6800 fx 847.310.3196

Exhibit B



Dan Grumley

December 26, 2006

Dear Dan,

This employment offer letter voids any previous employment offers both written and verbalized. This will be in effect December 11, 2006 through January 1, 2008. This letter supersedes any written or verbal arrangements before this date.

The pay structure includes a salary bi-monthly of $7,692.31 ($200,000/year) plus commission. An average retail contract commission is as follows. This could change from time to time.

| Monthly Fee | Term | Fin. Fee | Contract | Fin. Dollars | Contract Buyout | Servers | Install | Training | 189 dms | 99 rfu | 99 ndnc | Net | One Time | Comm. Amount | Comm. Percent | Commission |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $2,698 | 39 | 12.5% | $105,222 | (13,153) | 0 | (9,000) | (4,500) | (3,500) | (7,371) | (3,861) | (3,861) | $59,976 | $5,500 | $65,476 | 9% | $5,892.84 |

As part of your new employment contract you will report to James E. Knight. Daily reporting is required and tracking your appointments, visits, and phone calls in our sales tracking software (HG Sales) is part of this agreement and is not an option. You are responsible for averaging a minimum of three contracts per month. Your sales territory is California, Portland, OR and Reno, Nevada.

I am confident that you will make the territory successful. This is our biggest opportunity market and we need to succeed. I have the up most confidence that you can do this and are the right person for the job. In order for The Higher Gear Group to be successful in California I need you to be 100% committed to making this work.

If we hire a sales representative for Southern California LA South your commission structure will decrease from 9% to 4% override on anything sold (excluding any house deals).

Dan below are the goals that need to meet met on a consistent basis and reported on in HG Sales:
- Thirty (30) in-store approaches/cold calls per week in addition to the "inside referrals" generated from the company
- Four (4) in-store presentations per week in addition to the "inside referrals" generated from the company
- Two (2) in-store proposals per week

You must maintain these numbers as a minimum standard to move The Higher Gear Group, Inc. sales initiatives ahead.

Additional benefits will be supplied to you as follows:
1. A car allowance of $800.00 maximum per month to cover all related vehicle expenses.
2. A Cellular phone with 3,000 minutes a month, unlimited Cingular to Cingular, and Free nights and weekends.
3. A laptop and projector will be supplied with a wireless internet card.
5. All travel expenses are paid by THGG and reservations are done through the office with prior approval.
6. An additional $30 per diem for each 8 hrs. away from your home base with an overnight stay.
7. 401K is offered after 90 days of employment with no company participation.
8. With minimum sales criteria completed, vacation comes one (1) week after the first year, and two weeks after the second year and two (2) weeks each year thereafter.

This offer is contingent upon The Higher Gear Group receiving the original signed Non-Compete Agreement, signed employment handbook, as well as a fully executed copy of this letter signed by myself.

We look forward to having you on our team and wish you great success.

Sincerely,

Robert C. Gruen
Chief Executive Officer

Please acknowledge your acceptance of this offer by signing where indicated.

Signed _____    Date  12/28/06

Exhibit C   1 of 3

## CONFIDENTIALITY, NON-COMPETITION
## AND NON-SOLICITATION AGREEMENT

This Agreement is made this __18__ day of __MAY__, 20 _07_, by and between The Higher Gear Group, Inc., an Illinois Corporation ("Company") and _Dan Crumley_ ("Employee"). Company and Employee are sometimes referred to individually as a "Party" and together as the "Parties".

### RECITALS:

WHEREAS, the Company is engaged in the business of designing and licensing automotive software products to automobile dealers ("Company's Business");

WHEREAS, the Company designed and owns various software products, including "UpTyme", "DeskLog", "A.I.M.S", "H.G. Anywhere" and "S.A.S.S.I.". These software products are collectively referred to as the "Higher Gear Software Products";

WHEREAS, the Company desires that Employee provide services for the benefit of the Company, and Employee desires to accept employment with the Company;

WHEREAS, in the course of the employment with the Company, Employee will have access to certain confidential information which relates to or will relate to the business of the Company;

WHEREAS, the Company desires that such information not be disclosed to other persons or entities or otherwise used for unauthorized purposes.

NOW, THEREFORE, as an inducement to Company to employ Employee and in consideration of the covenants and agreements contained herein, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1. **Confidentiality.** The Employee shall not knowingly or negligently, under any circumstances or at any time in the future, communicate or give any person or entity not authorized in writing in advance by Company, access to any Confidential Information. As used herein, "Confidential Information" means all of the following owned by, licensed by, or otherwise in the possession of the Company, or used in connection with the Company's Business: trade secrets, proprietary products, processes, computer programs, software source codes and system features, data and information, customer information, pricing information, customer lists, information relating to the financial or operating results of the Company's Business and any other information, products, software or processes which are proprietary to or in the possession of the Employee and not generally available to the public. The employee agrees never to use or disclose the Confidential Information to any person, firm, corporation, association or other entity unless specifically authorized to do so in writing in advance by the Company. Employee agrees that all documents and other materials containing Confidential Information or portions thereof delivered to him by Company and all reproductions, of any kind, shall, at all times, be and remain the property of the Company and that the same will be delivered promptly to Company upon the termination of Employee's employment with Company.

2. **Ownership of Confidential Information**
   a. Employee agrees that all Confidential Information shall be and remain the sole and exclusive property of the Company;

   b. Employee agrees that all computer programs, documentation, technical descriptions for products, users guides, illustrations, and other copyrightable works, including any contributions to such materials, created by Employee during the employment relationship and related to the Company's Business, shall be considered the "works made for hire" under the copyright laws of the United States. Employee hereby transfers and assigns to Company all rights in the copyrights embodied in such materials. Employee agrees that

Ex. C 2 of 3

during and after the employment relationship, he will execute any additional assignments or other documents reasonably necessary to vest full ownership in the Company;

3. **Non-Competition and Non-Solicitation**.  The employee acknowledges that, by virtue of his involvement in the Company's Business and the Higher Gear Software Products, Employee will be exposed to and will have access to Confidential Information.  The Employee further acknowledges that his expertise, knowledge and experience in, of and with the Company's Business and the Higher Gear Software Products would enable him to use such information to benefit individuals or entities other than the Company.  Therefore, and in consideration, the Employee hereby covenants and agrees that, for the period beginning on the date hereof and ending for two (2) years after his employment with Company has terminated, neither he nor any affiliate will, directly or indirectly, alone or in association with others, either as a principal, agent, owner, shareholder, officer, director, partner, employee, lender, investor, consultant, manager, or in any other capacity:

   a. divert, take away, solicit, or interfere with or attempt to divert, take away, solicit, or interfere with the relationship of the Company with one or more persons or entities who or which are or have been suppliers, processors, customers, accounts, resources, distributors or dealers, to or of any of the Company's Business, the Company, or any affiliate of the Company;

   b. anywhere in Illinois engage in, establish, own, acquire, manage, join, invest in, have a financial interest in, control, participate in, provide consulting or advisory or other services to, accept employment with, or be in any way connected or affiliated with any business which engages in the design, sale and/or licensing of automotive software products to automobile dealers.

   c. solicit, recruit or offer or provide any inducement to any employee of Company to leave the employ of Company.

4. **Inventions and Patents**.  Employee will promptly disclose to the Company any and all inventions, discoveries, designs and improvements conceived, developed or first reduced to practice by Employee during the employment relationship, and materially related to the Company's Business, whether conceived by the Employee alone or with others.  All inventions, discoveries, designs, and improvements described herein shall be the exclusive property of the Employer.  The employee shall assist the Company in obtaining patents on all of the inventions, discoveries, designs and improvements deemed patentable by the Company and shall execute all documents and do all things necessary to obtain letters patent, vest the Company with full and exclusive title to them, and to protect them against infringement by others.

5. **Reasonableness of Restrictions**.  The employee has carefully read and considered the provisions of Sections 1, 2 and 3 of this Agreement and, having done so, agrees and acknowledges that the covenants set forth therein are fair and reasonable in scope and content and are necessary for the protection of the legitimate business interests of the Company.  The Employee further agrees and acknowledges that he has been given a reasonable period of time to deliberate upon the full implications of this Agreement, and that he fully understands such implications.

6. **Injunctive Relief**.  The Employee acknowledges that breach by him of any of the provisions of this Agreement could cause irreparable injury to the Company which, by its nature, would be continuing and substantial, but not capable of precise measurement, and for which no adequate remedy at law exists.  Accordingly, in the event of an actual or threatened breach of any of the covenants set forth in this Agreement, the Parties hereto agree that the Company shall be entitled to equitable relief without the necessity of posting bond, including, without limitation, entry of preliminary, temporary and permanent injunctions and orders of specific performance.  Such remedies shall, however, be cumulative and not exclusive, and shall be in addition to any other

Ex. C    3 of 3

legal or equitable remedy or remedies which the Company may have, including an accounting for profits or the recovery of damages.

7. **Attorneys' Fees.**  As part of any judgment rendered in favor of the Company in connection with a breach or threatened breach of this Agreement by the employee, the Company shall be entitled to recover its reasonable litigation expenses, including attorneys' fees.

8. The recitals set forth at the beginning of this Agreement are made a part of this Agreement.

9. **Miscellaneous Provisions**.

A. **Entire Agreement.**  Except as otherwise specifically provided for herein, this Agreement contains the entire Agreement between the parties hereto with respect to the subject matter hereof.  This Agreement supersedes any and all other memoranda, or agreements, oral or in writing, between the parties with respect to the subject matter hereof.

B. **Binding Effect.**  This Agreement shall be binding on the parties hereto, and their respective successors, heirs and representatives.

C. **Section and Other Headings.**  Section or other headings contained in this Agreement are for reference purposes only and shall not effect in any way the meaning or interpretation of this Agreement.

D. **Governing Law.**  This instrument shall be governed by, and construed in accordance with, the laws of the State of Illinois.

E. **Severability.**  Each section of this Agreement and each sentence, clause or phrase contained in such Section shall be considered severable and if, for any reason, any Section or sentence, clause or phrase, contained in such Section is determined to be invalid, unenforceable or contrary to any existing or future laws, that portion of this Agreement determined to be invalid or unenforceable may be removed or reformed so that such invalidity or unenforceability shall not impair the operation of or affect that portion of this Agreement which is valid.

F. **Venue and Jurisdiction.**  This Agreement has been accepted in Cook County, Illinois.  In the event that any party hereto commences any suit or other legal or administrative proceeding to enforce any of the terms or conditions of this Agreement, each party hereby consents to venue and subject matter jurisdiction in the Circuit Court of Cook County, Illinois.

G. **Presumption.**  Any uncertainty or ambiguity herein shall not be construed or resolved against any party whether under any rule of construction or otherwise.  Neither party shall be construed as the preparer of this Agreement.

H. **Failure to Enforce.**  The failure of either Party to enforce any of the provisions or parts thereof in this Agreement shall not be construed as a waiver of such provisions or parts thereof.  Further, any express waiver by either Party with respect to any breach of any provision or any part thereof hereunder by the other Party shall not constitute a waiver of any prior or subsequent breach or of such Party's right thereafter to fully enforce each and every provision or part thereof in this Agreement.

The Higher Gear Group, Inc.
("Company")

BY _____

("Employee")